Filed 8/3/26  P. v. Alonzo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E086253 |
| v. | (Super.Ct.No. FSB24003611) |
| ESTEBAN TOMAS ALONZO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Rafael A. Arreola, Judge.  (Retired judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Jo Pastore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Christopher P. Beesley and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Esteban Tomas Alonzo guilty of felony carrying of a dirk or dagger (Pen. Code, § 21310[1]), and he was sentenced to two years of probation. Defendant contends on appeal that the trial court abused its discretion in denying his motion to reduce the felony charge to a misdemeanor pursuant to section 17, subdivision (b) (hereafter, 17(b)). He further contends the trial court improperly delegated its authority to the probation department in violation of the separation of powers doctrine by imposing the probation condition to "follow all reasonable directives of the probation officer[s]," (all caps and boldface omitted) which condition defendant also asserts is impermissibly vague. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

A.      PROCEDURAL HISTORY

In October 2024, defendant was charged with assault upon a peace officer (§ 245, subd. (c)), resisting an executive officer in performance of duty (§ 69), and felony carrying of a dirk or dagger (§ 21310).

In December 2024, at a preliminary hearing, the trial court received testimony from the arresting officer. Based thereon, the trial court found there was insufficient evidence to hold defendant to answer to the section 245, subdivision (c), count. The court also denied as untimely, without prejudice, defendant's oral motion pursuant to section 17(b) to reduce the other two counts to misdemeanors because the motion was

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

2

made after the court had already stated its ruling on the charges to which defendant would be held to answer.

On May 20, 2025, a jury found defendant not guilty on the count of resisting an executive officer (§ 69). A mistrial was declared on the lesser-included offense of resisting a peace officer (§ 148, subd. (a)(1)), which offense was then dismissed at the request of the People. The jury found defendant guilty of carrying a dirk or dagger (§ 21310).

At the sentencing hearing on May 30, 2025, defendant again moved pursuant to section 17(b) to reduce the felony count on carrying a dirk or dagger to a misdemeanor based on his lack of criminal history. The trial court again denied the motion without prejudice and invited defendant to refile his motion in a year's time if there were no violations of his probation terms. The court sentenced the defendant to two years of probation and 60 days in county jail with work release.

At the end of the May 30, 2025, sentencing hearing, defendant executed a written probation terms and conditions form in which he agreed to the terms of his probation, including the term that he would "Cooperate with the Probation officer and follow all reasonable directives of the Probation Officers."

Defendant timely filed this appeal.

B.     FACTUAL HISTORY

In October 2024, two sheriff's deputies stopped defendant as he was walking on the side of Big Bear Boulevard at approximately 5:50 a.m. The deputies testified that they stopped defendant because he had been walking in the lane of traffic.

3

The deputies alleged that defendant refused to stop when instructed. As the deputies approached defendant, with one deputy holding a taser pointed at defendant and the other deputy holding his firearm pointed at the ground, defendant walked backwards away from them and took a "boxer stance" or "fighting stance." The deputies attempted to physically detain defendant, but he broke free of their grip and swung his arm at them. The deputies testified that the videos from their body cameras, which the jury viewed and which one deputy described as "blurry," showed that defendant had a knife in his hand when he swung.

The deputies were able to physically detain defendant after deploying a taser, which caused defendant to fall and hit his head. The jury was shown a photograph of defendant's head injury. Upon detaining defendant, one of the deputies discovered a non-folding knife, with an approximate four-inch-long blade, in defendant's sleeve.

## DISCUSSION

### A.      SECTION 17 MOTION TO REDUCE FELONY TO MISDEMEANOR

Section 21310, under which defendant was charged, is a "wobbler" offense as it is "chargeable as either a misdemeanor or a felony." (*Lopez v. Superior Court* (2008) 160 Cal.App.4th 824, 828, fn. 5.) Defendant alleges the trial court abused its discretion in denying his section 17(b) motion to reduce the section 21310 charge to a misdemeanor.

Section 17(b) provides that the trial court may, in its discretion, classify a wobbler crime as a misdemeanor, either upon imposition of a punishment other than state prison or by declaration after a grant of probation. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 974 (*Alvarez*).) The trial court's ruling on a section 17(b) motion is

4

reviewed for abuse of discretion, and the appellant has the burden of showing that the decision was irrational or arbitrary. (*Alvarez*, at p. 977.) Absent a showing that the sentencing decision on the section 17(b) motion was irrational or arbitrary, " 'the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " (*Alvarez*, at pp. 977-978.)

The relevant factors for the trial court to consider in connection with a section 17(b) motion include "the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial," as well as the general objectives of sentencing that are now set forth in the California Rules of Court, rule 4.410. (*Alvarez*, *supra*, 14 Cal.4th at 978.) This broad authority is constrained by the requirement that the trial court's decision be based on the "individualized consideration of the offense, the offender, and the public interest." (*Ibid*.)

There is no indication in the record here that the trial court failed to consider the *Alvarez* factors or considered any inappropriate factors. The trial court was certainly aware of the relevant details of defendant's encounter with the deputies, including having viewed the same body camera videos as the jury, because the same judicial officer who denied the section 17(b) motion also presided over the preliminary hearing and trial where this information was presented. The court alluded to this in its ruling on the section 17(b) motion at the May 30, 2025, sentencing hearing, as it remarked to defendant that "I heard your case actually a couple times. I heard the preliminary hearing

5

and heard the testimony at trial. The jury found you not guilty on the first charge [of resisting an executive officer]. You're lucky in that respect." The court's comments reflect that it appropriately considered the nature and circumstances of the offense of which defendant was convicted. There is nothing in the record, and defendant has not specified any portion of the record, that would indicate that the trial court acted irrationally or arbitrarily in denying the section 17(b) motion.

Defendant argues his section 17(b) motion should have been granted based on the following: (i) his encounter with the sheriff's deputies was escalated by the officers, who deployed their tasers, leading to defendant falling and hitting his head badly enough to require medical treatment; (ii) he was carrying the knife for a lawful purpose, specifically to protect himself from wildlife while walking to work; and (iii) his criminal history consisted of only one driving under the influence charge approximately 10 years before this arrest. Defendant is effectively requesting that this court substitute its judgment for the judgment of the trial judge, which relief is neither authorized nor warranted. (*Alvarez*, *supra*, 14 Cal.4th at p. 978.) "A convicted defendant is not *entitled* to the benefits of section 17(b) as a matter of right. Rather, a reduction under section 17(b) is an act of leniency by the trial court, one that 'may be granted by the court to a seemingly deserving defendant.' " (*People v. Tran* (2015) 242 Cal.App.4th 877, 892.)

Moreover, there is no evidence that the trial court failed to consider the specific circumstances raised by defendant. As noted *ante*, the court viewed the body camera footage and heard the deputy's testimony about the encounter, so it was well aware of how the encounter between defendant and the deputies unfolded. The court, like the jury,

saw the photograph of the injury that defendant sustained from the fall after he was tased. The court also heard defendant's statement from the body camera footage that he had the knife "for animals." The court was certainly aware of defendant's lack of criminal history, as defendant's counsel raised that point at the May 30, 2025, sentencing hearing in support of the motion, just before the court stated its ruling. The court in fact expressly took defendant's lack of criminal record into account when ordering probation rather than the 16 months in state prison that the People requested. The fact that the trial court in its explanation of its ruling did not expressly reference all of the *Alvarez* factors or the circumstances identified by defendant does not mean the trial court did not consider them. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) Rather, in the absence of an affirmative record to the contrary not present here, the court is presumed to have considered all relevant factors. (*Ibid.*)

Defendant's argument that the trial court improperly deferred its ruling on the motion, transforming section 17(b) relief into "a reward for good behavior rather than an evaluation of the offense, and the offender, at the time of sentencing," is also unavailing. Section 17(b), subsection (3), specifically authorizes the trial court to reduce the felony offense to a misdemeanor either at the time of granting probation or upon application by the defendant "thereafter." With respect to the court's specific comment to defendant that "if you do well, I'll reduce it in a year," a similar comment from the trial court to the defendant in *Tran*, to " '[c]ome back next year' " was not a basis for remand. (*People v. Tran*, *supra*, 242 Cal.App.4th at pp. 884, 891.) Instead, the option to grant the motion at a later time "serves as both a motivation and reward to a defendant to comply with

7

probation conditions." (*Id.* at p. 891.) The trial court here appropriately acted within its discretion—and consistent with section 17(b), subsection (3)—in denying defendant's motion while inviting defendant to file another motion in a year's time.

B.   PROBATION CONDITIONS

As the state Supreme Court observed, "the Legislature has empowered the court, in making a probation determination, to impose any 'reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer....' (Pen. Code, § 1203.1, subd. (j).)" (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).) The trial court has broad discretion in setting the conditions of probation, and the defendant may elect to refuse probation and instead serve his sentence if he feels the probation conditions are too onerous. (*Ibid.*)

Section 1202.8, subdivision (a), provides that "Persons placed on probation by a court shall be under the supervision of the county probation officer who shall determine both the level and type of supervision consistent with the court-ordered conditions of probation." Section 1203 provides in relevant part that probation is "the suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community under the supervision of a probation officer." Together, these two statutes provide that while it is the trial court that sets the terms of probation, "the trial court has authority to empower the probation department with authority to supervise

8

the probation conditions." (*People v. Kwizera* (2000) 78 Cal.App.4th 1238, 1240 (*Kwizera*).)

Probation conditions are ordinarily reviewed for abuse of discretion. (*Olguin, supra*, 45 Cal.4th at p. 379.) However, we review de novo any constitutional challenges to a condition of probation. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.) There is no forfeiture on appeal for any constitutional challenges to a probation condition, including challenges based on unconstitutional vagueness, despite the appellant's lack of objection to the condition at the trial level. (*Ibid.*)

### 1.    *IMPROPER DELEGATION*

Defendant contends that the probation condition that he "follow all reasonable directives of the Probation Officer[s]" was an improper delegation of the court's authority to the probation officers. "Under the separation of powers doctrine (Cal. Const., art. III, § 3), judicial powers may not be delegated to nonjudicial officers." (*People v. Smith* (2022) 79 Cal.App.5th 897, 902.)

"Probation officers have wide discretion to enforce court-ordered conditions, and directives to the probationer will not require prior court approval if they are reasonably related to previously imposed terms." (*In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1373.) A different division of this court previously found no issue with a probation condition of substantially identical phrasing to the one challenged by defendant. (*Kwizera, supra*, 78 Cal.App.4th at 1240-1241 [probation condition cited with approval by the high court in *Olguin, supra*, 45 Cal.4th at p. 381].)

9

In *Kwizera*, the defendant's probation conditions included the requirement that he "[f]ollow such course of conduct as the probation officer may prescribe." (*Kwizera*, *supra*, 78 Cal.App.4th at 1240.) This requirement was found to be "a reasonable probation condition to enable the department to supervise compliance with the other probation conditions," for example if the probation department needed to set a date and time for administration of a drug test or for defendant to report to the department. (*Id.* at pp. 1240-1241.)

We see no reason to distinguish defendant's probation condition from that which was approved in *Kwizera*. While it is true, as defendant argues, that he is not being ordered to complete any programs or submit to drug testing like the defendant in *Kwizera*, there are other probation conditions that were ordered by the trial court here for which the probation officer would need to have the ability to make reasonable requests of defendant, e.g., the condition that defendant permit visits of his place of residence by agents of the probation department would reasonably require the probation department to have the ability to schedule those visits with defendant.

Defendant's argument that the probation officer "could decide anything is a 'reasonable directive' and require additional programming or other conditions" is misplaced. A similar argument was raised, and rejected, in *Kwizera*. As the *Kwizera* court reasoned, "[s]ince the court does not have the power to impose unreasonable probation conditions, it could not give that authority to the probation officer .... [The challenged condition] does not … authorize the probation officer to irrationally tell a defendant 'to jump,' as defense counsel fears." (*Kwizera*, *supra*, 78 Cal.App.4th at pp.

10

1240-1241.) Only the court has the power to set probation conditions, and the probation officers are empowered only to supervise those conditions. In the event a probation officer attempts to interpret the "reasonable directive" language in a manner that unreasonably seeks to expand defendant's probation conditions, defendant may file a petition for modification of the probation condition. (See *People v. Arevalo* (2018) 19 Cal.App.5th 652, 658 [if probation officer disapproves of a defendant's desired residence for an arbitrary reason, the defendant "may file a petition for modification of [their] probation condition"].)

Defendant cites *In re Danielle W*. (1989) 207 Cal.App.3d 1227 in support of his challenge to the probation condition. However, *Danielle W.* supports the opposite conclusion in this case. The appellant in *Danielle W.* challenged a visitation order made by the dependency court that the visits between her and her children would be at the discretion of the social worker and the children. (*Id.* at p. 1233.) The reviewing court held that this was not an improper delegation of judicial power because the order ensured that the children would not be forced to visit their mother against their will and "simply authorizes the Department to administer the details of visitation, as specified by the court." (*Id.* at p. 1237.) As the *Danielle W.* court noted, "Separation of powers does not mean an entire or complete separation of powers or functions, which would be impracticable, if not impossible." (*Id.* at p. 1236.)

The probation condition in question here is akin to the challenged condition in *Danielle W.*, as the requirement that defendant follow the reasonable directives of the probation officers is intended to effectuate the court's orders and allow the probation

department to address the details of those orders. It is not, as defendant claims, a broad conveyance of discretion to the probation officers.

We find no improper delegation from the probation condition ordered by the trial court.

## 2. *VAGUENESS*

Defendant also challenges the "reasonable directives" condition as impermissibly vague.

"A probation condition is unconstitutional when its terms are so vague people of 'common intelligence' must guess at its meaning. [Citation.] … A condition is sufficiently precise if its terms have a 'plain commonsense meaning, which is well settled.' " (*In re R.P.* (2009) 176 Cal.App.4th 562, 566.) A probation condition should not be invalidated as vague " ' " 'if any reasonable and practical construction can be given to its language.' " ' " (*People v. Hall* (2017) 2 Cal.5th 494, 501.) Probation conditions must be "interpreted in context and with the use of common sense." (*People v. Rhinehart* (2018) 20 Cal.App.5th 1123, 1129.)

In this instance, when viewed using common sense and in the context of all other probation conditions to which defendant is subjected, there is nothing vague about the "reasonable directive" condition on its face. It is clear under its plain language and can be easily understood by a person of common intelligence that defendant is to follow the instructions provided to him by his probation officers.

Defendant claims that the condition "does not provide any guidance as to what is expected of him." Using the commonsense interpretation of the probation condition, it is

readily apparent that "guidance" to defendant will be supplied by his probation officer. There is nothing vague about this concept, and in fact reviewing courts have commonly utilized directives from probation officers to *avoid* vagueness in a probation condition. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 892 [Supreme Court suggests that challenged probation condition be modified to state that minor child may not associate with anyone " 'known to be disapproved of' " by her probation officer]; *People v. Turner* (2007) 155 Cal.App.4th 1432, 1436 [to address vagueness challenge, Court of Appeal modifies probation condition to state that defendant shall not possess sexually stimulating material "having been informed by the probation officer that such material is inappropriate"]; *In re Victor L.* (2010) 182 Cal.App.4th 902, 918 [modifying challenged probation condition to "provide for the probation officer to notify" the minor of the areas he is to avoid, to avoid vagueness].)

We find no merit to the contention that the defendant or the trial court would not be able to ascertain if defendant is complying with his probation conditions.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS.

MILLER
J.

We concur:

RAMIREZ
P. J.
CODRINGTON
J.